# IN THE UNITED STATES BANKRUPTCY
# COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| KENNETH & JO ANN BELANGER | : |
| DEBTOR(S) | : BANKRUPTCY NO. 13-13577 |
| | : |
| ROBERTA A. DEANGELIS<br>UNITED STATES TRUSTEE | : |
| PLAINTIFF | : |
| V. | : |
| KENNETH & JO ANN BELANGER | : |
| DEFENDANTS | : ADV. NO. 14-0073 |

# OPINION

BY:  STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

## I.    Introduction

The United States Trustee has filed two pleadings: a motion to dismiss this case under § 707(b)(3) and a complaint to deny the Debtors a discharge under § 727(a)(4). A hearing on both matters was held November 13, 2014. For the reasons which follow, the request for denial of discharge will be denied but the motion to dismiss the case will be granted.[1]

---

[1] As these proceedings involve matters concerning the administration of the estate and objections to discharge they are within this Court's core jurisdiction.  See 28 U.S.C. § 157(b)(2)(A) and (J).

## II.  Background

On April 23, 2013 the Debtors commenced this Chapter 7 bankruptcy case. On May 8, 2013 the Debtors filed their Schedules, Statement of Financial Affairs and means test calculation. On May 22, 2013, they amended their Schedules I and J. The §341 creditors meeting was scheduled for June 6, 2013.

The creditors' meeting was continued four times before the Trustee had received all of the information he had requested regarding the Debtors' financial situation. (See Docket entry #55 rescheduling meeting and reasons for same). On August 15, 2013 the Debtors filed a second amended Schedule J. On September 13, 2013, the Chapter 7 Trustee reported that the creditors meeting was concluded.

On December 16, 2013, the Chapter 7 Trustee and the UST undertook a Rule 2004 examination of the Debtors. On January 30, 2014, the UST filed a motion to dismiss the case under § 707(b)(3) of the Code. On February 11, 2013, the UST filed a complaint to deny the Debtors a discharge pursuant to § 727(b)(4). After numerous continuances the two matters were tried on November 13, 2014.

## III.  Discussion

*Evidentiary Burdens*

As to both the objection to discharge and the motion to dismiss, the UST bears the burden of proof. *See* Fed. R. Bankr.P. 4005 (allocating the burden of proof upon the creditor objecting to discharge); and *Lenton v. U.S. Trustee*, 2009 WL 1872667, at *2 (E.D.Pa.June 29, 2009) (explaining that party moving to dismiss under § 707(b)(3) bears burden of proof). To meet either burden, the evidence offered by the plaintiff or

2

moving party must preponderate. S*ee, e.g., In re Georges*, 138 Fed.Appx. 471, 472 (3d Cir.2005)

*Debtors' Disclosures*
*Prior to 341 Meeting*

The UST bases both actions on the Debtors' alleged failure to accurately disclose their income and expenses. The pertinent information was first reported on May 8, 2013 when the Debtor's filed their original Schedules I (Income) and J (Expenses). *See* Ex. T-4. Those schedules showed the Debtors to have a monthly net income of $1,287. *Id.* Two weeks later, however, the Debtors amended the schedules. *See* Ex. T-6, T-5[2] While the amendments did not materially change the Debtors' income, they substantially increased their monthly expenses. Specifically, the amount devoted to taxes increased three-fold. The original Schedule J listed an expense of $500 as "Saving for Taxes." The amended schedule increased that payment to $1803 and described it as "Tax Agreements with IRS and PA Department of Revenue (projected)." *See* T-5. The upshot of increasing the tax payment—as well as other minor changes—was that the Debtors' monthly net income went from a sizable surplus (+$1287) to a small deficit (-25). *Id.*

*Disclosures After*
*341 Meeting*

Those figures did not change until after the Chapter 7 Trustee convened the meeting of creditors. As noted, that meeting was continued several times until the

---

[2] The Court has cited those amendments out of numerical order because the first amended Schedule I (expenses) was offered into evidence before the first amended Schedule J (Income).

3

Trustee had received the information necessary to assess the Debtors' financial situation. The docket reflecting the original continuance reads as follows:

> Meeting of Creditors Continued. Reason for continuance: Copies of bank account statement for all accounts, including business and personal 2011 and 2012 personal and business tax returns including all schedules, status on the loan modification for the debtor's residence, amendment to Schedules B (to list a value for the debtors business, J (to accurately reflect the debtors monthly expenses at the time of filing – not projected future payments), and the Statement of Financial affairs (to include the debtors accountants name)… 341 (a) meeting to be held on 8/15/13 …

Case No. 13-13577, Docket Entry #55.

The same day as the continued creditors meeting (8/15/2013), the Debtors filed a second amended Schedule J. The second amendment eliminated the Debtors' mortgage payment altogether ($3400), as well as the tax expense ($1803). At the same time, however, the second amendment tripled their car payment (from $253 to $750) and added two new expenses: surgery ($1400) and accounting ($200). The effect of these adjustments was to return the Debtors' monthly net income to positive territory, and in an even larger amount (+$3,080).

*Rule 2004 Examination*

Apparently suspecting abuse, the UST moved for an order compelling the Debtors to submit to a Rule 2004 Examination.[3] *See* Docket entry #59. On December 16, 2013, the UST—along with the Chapter 7 Trustee and a judgment creditor—deposed the Debtors. At the examination the Debtors testified to receiving income which they failed to disclose on Schedule I. As to expenses, their testimony established

---

[3] On October 31, 2013, the Chapter 7 Trustee filed a separate Motion for a 2004 Examination to examine the Debtor's accountant. The record does not reflect whether that examination ever occurred.

4

that various expenses were either overstated or altogether improper. The discrepancies prompted the UST to file the motion to dismiss and the objection to discharge.

*Objection to Discharge*

Objections to discharge are liberally construed in favor of the debtor and strictly construed against the objector. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993). Additionally, "'[t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural.'" *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir.1997). The Third Circuit has admonished that denying a debtor his discharge "is an extreme step and should not be taken lightly." *Rosen*, *supra*, 996 F.2d at 1531.

The UST's discharge challenge is premised on § 727(a)(4). That subparagraph provides that the court shall grant the debtor a discharge, "unless ... the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account." Section 727(a)(4)(A) is designed to ensure that the debtor puts dependable information in the hands of those interested in the administration of the bankruptcy estate without the need for the trustee or a party in interest to engage in costly, exhaustive investigations to ferret out the truth concerning the Debtor's financial condition. *See, e.g., In re Burnley,* 1999 WL 717215, at **2–3 (Bankr.E.D.Pa. Aug.27, 1999). As such, § 727(a)(4)(A) applies "not only to false statements made under sworn oath, but also to unsworn declarations under penalty of perjury, such as those made by a debtor on Official Bankruptcy Forms." *Id.* citing *In re Kasal,* 217 B.R. 727, 734 (Bankr.E.D.Pa.), *aff'd,* 223 B.R. 879 (E.D.Pa.1998)

5

To prove a § 727(a)(4)(A) claim, the Plaintiff must demonstrate (1) that the debtor made a statement under oath; (2) that the statement was false; (3) that the debtor knew that the statement was false, (4) that the debtor made the statement with fraudulent intent; and (5) that the statement was related materially to the bankruptcy case. *See In re Spitko,* 357 B.R. 272, 312 (Bkrtcy.E.D.Pa. 2006).

To prove a claim under § 727(a)(4)(A), the evidence must show that the debtor intended to defraud his creditors or estate. *In re Giquinto,* 388 B.R. 152, 179 (Bkrtcy.E.D.Pa. 2008). "Fraudulent intent can be inferred from the totality of circumstances gleaned from circumstantial evidence." *Id.* "The requirement that a false statement is knowingly and fraudulently made is satisfied for purposes of 11 U.S.C. § 727(a)(4)(A) if the debtor knows the truth and nonetheless willfully and intentionally swears to what is false." *Id. quoting Cadle Co. v. Zofko*, 380 B.R. 375, 382 (W.D.Pa.2007) quoting *In re Dolata,* 306 B.R. 97, 148–49 (Bankr.W.D.Pa.2004)). The Bankruptcy Court in *Spitko, supra*, made this observation regarding the determination of fraudulent intent:

> Courts may consider the debtor's education, business experience, and reliance on counsel ..., but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel. Furthermore, a debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he made under oath.

357 B.R. at 313. A party "objecting to discharge must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions." *In re Kelly,* 135 B.R. 459, 461 (Bankr.S.D.N.Y.1992). Further, while an amendment cannot expunge

6

the falsity of an oath, voluntary disclosure through amendment is still relevant to the Debtor's subjective intent. *See Id.* at 461 ("it is well established that the court may consider the debtor's subsequent voluntary disclosure as evidence of innocent intent").

The UST's Complaint for denial of discharge is based on the information provided by the Debtors in their Schedules I and J. The UST maintains that such information is false and that the Debtors knew it was false when they provided it. *See* Complaint generally.

*Income*

In the Debtors' Schedule I, the sole source of income reported as received by Mrs. Belanger is Social Security benefits. When asked at her deposition if this was true, Mrs. Belanger admitted to receiving other income. Specifically, she testified that she was also receiving money from their business. Ex. T-11, Deposition, 12:5. At trial she conceded that for the year 2013 she received $23,000 from their business in draws. Audio Recording of Trial (Tr) 11:20; 11:29:35. She had no explanation for why that income was not disclosed except to say that taxes were paid on those amounts. *Id.* Their accountant testified that the amount of business income on the Schedule I was derived from what was reported on their 2012 tax return, and not what was taken as draws. Tr. 12:50.

*Mortgage Expense*

When they filed their Schedule J in May 2013, and amended it the same month, the Debtors listed a monthly mortgage expense of $3400. The second amendment to Schedule J deleted that expense altogether. When asked about this, Mrs. Belanger stated that this was done at the direction of the Chapter 7 Trustee. She explained that

7

after telling him at the creditors meeting that they had stopped making mortgage payments, the Trustee told them that they could not list the monthly mortgage amount as an expense on Schedule J. Tr. 11:33

*Taxes*

As noted above, the first amendment to Schedule J increased the amount expended for taxes from $500 to $1800. Mrs. Belanger explained that they owed significant federal and state tax debt. Tr. 11:26. They listed the Internal Revenue Service and Department of Revenue on their schedules, but could attribute a liquidated figure only to the IRS ($90,000). Tr. 1:10 As to the state taxes, their accountant testified that he was preparing two offers in compromise but could not complete them until the state returns were processed. *Id.* The increase from $500 to $1800 represented their best guess as to what they owed the taxing authorities. *Id.*

*Student Loans*

Schedule J lists an expense of $376 under Line 13b Installment Payments/Other for "student loans." At her deposition, Mrs. Belanger testified that the loans were taken out for her son's education. T-11, Dep. 18:17. She further explained that the expense represented two loans, one for which her son is liable and one for which she signed and is, therefore, liable. *Id.* 78:11-16. As to the total expense of $376, the Debtors themselves are liable for no more than $150. *Id.* 78:17:22. Although they are not liable for the entire expense, Mrs. Belanger stated that they voluntarily assumed the whole liability based on a promise to their son. *Id.* 78:23-25

*Surgery*

The second amended Schedule J also added under "line 17/Other" an expense described as "surgery" for $1400. Mrs. Belanger testified that this related to her husband's cataract operation. Tr. 11:37. She stated that the surgery required a special lens not covered by insurance. *Id.* It was, however, not an ongoing and necessary medical expense, but one-time copay. At her deposition in December 2013, Mrs. Belanger testified that the expense had been paid. T-11, Dep. 24:7-8

*Accounting*

The last new expense introduced in the second amendment to Schedule J was a $200 monthly expense for accounting. Mr. Belanger explained that accounting expertise was needed because of their tax problems. T-11, Dep. 2:44

*Car Payment and*
*Car Insurance*

With regard to automobiles, the second amended Schedule J lists two expenses: under Installment Payments, a monthly car payment of $750, and under Insurance, a monthly payment of $297. At her deposition, Mrs. Belanger testified that originally the Debtors paid about one third of the car payment and the rest was charged to their business. T-11, Dep. 84,85. That later changed as the business assumed the entire amount. *Id.* 102-103 After the bankruptcy was filed, payments on the car stopped altogether. *Id.* 85. At the end of 2013, the Debtors redeemed the car. At trial Mrs. Belanger confirmed this arrangement. Tr. 2:39-43, and 2:57:25. She also confirmed that car insurance was being paid entirely by the business. T-11, Dep. 104; Tr 11:46.

9

*Application for*
*Loan Modification*

In addition to the Schedules, the UST maintains that the Debtors' Application for a loan modification contains information sharply at odds with their bankruptcy schedules. The Court agrees. The application itemizes a $4400 monthly mortgage payment even though the Debtor had stopped paying their mortgage. See Ex. T-8. Similarly, their application lists monthly gross income of $11,300 which is substantially more than what is disclosed on Schedule I. Compare T-8 with T-6.

*Conclusions Regarding*
*Trustee's Discharge Complaint*

It is undeniable that even after two amendments to Schedules I and J a completely accurate picture of the Debtors finances did not emerge, and perhaps has not yet. It took a deposition of the Debtors to obtain a somewhat better idea of what the Debtors earned and what they spent. The Court, although possessed of a healthy skepticism, stops short, however, of concluding that what has been proven represents deceit on the Debtors' part. The Debtors had explanations, albeit thin, as to some of the omissions or errors in disclosures. As to the mortgage expense, the Debtors say they deleted it from their Schedule J because the Chapter 7 Trustee informed them the deduction was improper. As to the expense for tax "savings" or "settlement," the Debtors and their accountant testified to a significant outstanding tax liability. They hoped to resolve it with an Offer in Compromise. To do that, they believed they would need to set aside funds to pay the taxing authorities. The Debtor's student loans are partially their obligation and the Debtors offered a plausible reason—albeit a legally incorrect one—for why they were required to pay the entire amount. The surgery

expense was wrongly claimed because it is not an ongoing expense, but it was not a complete fabrication.

That is not to say that the Debtors' disclosures are not problematic. As to why she failed to disclose the 2013 income ($23,000) which she received from their business, Mrs. Belanger could offer no explanation. Similarly, they could not explain why the second amendment to Schedule J tripled the monthly car payment and continued to list auto insurance as the Debtors' obligation, when the business had assumed both expenses. These errors and omissions could possibly be attributed to mistake, misunderstanding or inadvertence. Proof of fraudulent intent is an exceedingly close call here. Given that overwhelming grounds exist for dismissal of this case based on abuse, the Court will afford the Debtors the benefit of its considerable doubt and the issue of intent will be resolved in their favor. Judgment on the UST's complaint objecting to discharge will therefore be entered in favor of the Debtors and against the UST.

*Motion to Dismiss*

While the record did not conclusively demonstrate fraud on the Debtors' part, it does show abuse on their part which warrants dismissal of the case outright. That is the basis of the UST's alternative request for relief. See Motion to Dismiss, generally. The UST relies on Code § 707 which provides, in pertinent part:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider--
>
> **(A)** whether the debtor filed the petition in bad faith; or
>
> **(B)** the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the

11

> financial need for such rejection as sought by the debtor) of
> the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3). The UST's motion argues that the totality of the circumstances demonstrates abuse. *See* Motion, ¶ 18. These circumstances include the Debtor's misleading and erroneous disclosures as well as an ability to pay a substantial portion of their debts. *Id.* ¶ 19. The Debtors' general response is that these disclosures were either good faith estimates of future income or mistakes which were corrected once discovered. *See* Response.

*Failure to Disclose*

The record demonstrates clearly that the Debtors' Schedules contain misleading and erroneous information. Even after two amendments, the Debtors still failed to accurately disclose their income and expenses. At the Rule 2004 examination the UST elicited testimony—confirmed at trial—which either disproved entirely, or called seriously into question, the veracity of various disclosures regarding the couple's income and expenses.

*Ability to Pay*

The significance of this, for purposes of the dismissal motion, is not so much in the missteps themselves, but rather in what they prove. The amendments reflect a surplus net monthly income of about $3,000, and even that is based on the inclusion of certain expenses, which the record demonstrates are not legitimate. As a result, an even greater recovery should be available to the creditor body. A Chapter 7 debtor's ability to pay a substantial portion of his debts is of paramount importance to a determination of abuse. *See In re Lenton*, 358 B.R. 651, 664 (Bkrtcy.E.D.Pa. 2006)(concluding that following the enactment of BAPCPA Congress intended that

12

bankruptcy courts retain discretion to consider a debtor's actual ability to pay, notwithstanding the outcome of the means test) Perforce, determining an ability to pay will necessarily require the Court to determine what the debtors' income and expenses actually are and what they will be over the applicable Chapter 13 commitment period. *In re Richie*, 353 B.R. at 575-576. The Court accordingly will turn to the record and what it establishes in that respect.

      To begin, the Debtors obviously failed to include all of their income on Schedule I. To reiterate, at her deposition, Mrs. Belanger testified that in addition to Social Security, she was also receiving draws from their business. For the year 2013, she testified to receiving $23,000 which she failed to disclose. At trial, she confirmed this. Accordingly, that amount ($23,000) divided by 12 months ($1916) must be added to their monthly income.

      Turning to expenses, the Court notes that the Debtors' complete deletion of their mortgage payment significantly contributes to their monthly surplus income. At first blush one would surmise that some housing expense should be included. However, there is no evidence to that effect. Although their mortgage lender received stay relief and the property was sold at sheriff's sale in February 2014, the record indicates that the Debtors have not vacated the premises. Further, the record also indicates that the Debtors are not paying anyone anything for continuing to live at the property. The Court cannot project the Debtors' future housing costs. It will therefore leave the Debtors' housing cost at zero, for present purposes, because, however improbable, that is what the Debtors have sworn to on multiple occasions.

The same is not the case, however, with respect to other challenged expenses. For instance, the record does not support any allowance for car insurance ($297). Both the deposition and trial testimony confirmed that the business was paying for car insurance. Similarly, the testimony established that the Debtors no longer had a monthly car payment ($750) because they have redeemed the vehicle. The student loan expense must be partially adjusted: Mrs. Belanger's testimony, both at the deposition and at trial, confirmed the Debtors' monthly liability for their son's loans was limited to $150. Finally, the expense for a one-time surgery ($1,400) payment must be deleted. All of these adjustments are reflected in the table attached to this Opinion as Exhibit 1.

The effect of this is to increase the Debtors' monthly net surplus income from $3,080 to $7,645. That adjusted amount, multiplied over 60 months comes to $458,700. After subtracting costs of administration of $44,500,[4] what remains for creditors would be roughly $414,000. As total claims are about $266,000 (secured: $101,000; priority: $120,000; and general unsecured: $45,000), it appears that sufficient funds exist to pay creditors in full. This disqualifies the Debtors from proceeding under Chapter 7 and conversely establishes that the commencement of the case under Chapter 7 constitutes abuse. It will therefore be dismissed.

IV.   **Summary**

The record falls just short of demonstrating fraudulent intent on the part of the Debtors for purposes of an objection to discharge under § 727(a)(4). Ample grounds

---

[4] The Court has applied the administrative expense multiplier required by the Chapter 7 means test. *See* 11 U.S.C. § 707(b)(2)(ii)(III). For the Eastern District of Pennsylvania, that rate is 9.7% for cases filed in April 2013. See www.justice.gov/ust/eo/bapcpa, Administrative Expense Multiplier

14

exist, however, for dismissing the case as abusive under § 707(b)(3).

    An appropriate Order will be entered.


                                      By the Court:

                                      _____
                                      Stephen Raslavich
                                      United States Bankruptcy Judge

Dated: <u>January 28, 2015</u>

# **EXHIBIT 1**

| Category | | First Amended Schedule I | | | Adjustments | | |
|---|---|---|---|---|---|---|---|
| | | Debtor | Spouse | | Debtor | Spouse | |
| Income | | 2708.33 | 0 | | 2708.33 | 0 | |
| Payroll Deduc | | 1802.69 | 0 | | 1802.69 | 0 | |
| Net | | 905.64 | 0 | | 905.64 | 0 | |
| | | | | | | | |
| Reg Inc Business | | 6000 | 0 | | 6000 | 1916 | |
| Social Security | | 1632 | 763 | | 1632 | 763 | |
| Subtotal | | 7632 | 763 | | 7632 | 2679 | |
| | | | | | | | |
| Total Monthly Income | | 8537.64 | 763 | | 8537.64 | 2679 | |
| | | | | | | | |
| Combined Total | | | | 9300.64 | | | 11216.64 |

EXPENSES

| Category | | Second Amended Schedule J | | | Adjustments | | |
|---|---|---|---|---|---|---|---|
| Rent Mtge | | 0 | | | 0 | | |
| Utilities | | | | | | | |
| | Electric Heat | 475 | | | 475 | | |
| | Water Sewer | 70 | | | 70 | | |
| | Telephone | 0 | | | 0 | | |
| | Other | 107 | | | 107 | | |
| Home Maintenance | | 200 | | | 200 | | |
| Food | | 500 | | | 500 | | |
| Clothing | | 100 | | | 100 | | |
| Laundry Dry Clean | | 100 | | | 100 | | |
| Medical Dental | | 150 | | | 150 | | |
| Transportation (Not car) | | 200 | | | 200 | | |
| Recreation | | 100 | | | 100 | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Charitable | | 100 | | | 100 | | |
| Insurance | | | | | | | |
| | home rent | 0 | | | 25 | | |
| | life | 609.3 | | | 609.3 | | |
| | health | 486 | | | 486 | | |
| | auto | 297 | | | 0 | | |
| Taxes | | 0 | | | 0 | | |
| Installment Payments | | | | | | | |
| | auto | 750 | | | 0 | | |
| | student loans | 376 | | | 150 | | |
| Other | | | | | | | |
| | surgery | 1400 | | | 0 | | |
| | accounting | 200 | | | 200 | | |
| | | | | | | | |
| Total Expenses | | | | 6220.3 | | | 3572.3 |
| | | | | | | | |
| Income less Expenses | | | | 3080.34 | | | 7644.34 |

2